IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ULYSSES A. BELLAMY,**

      **Plaintiff,**

vs.                                                                         Civil Action No. 2:17cv115
                                                                        (Judge Bailey)

**DIANA R. MILLER, AWP;
JOHN DOE, President of Glenville
State College; STEVE FINCHAM, CPS;
SHANNO SHIFLET,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On August 28, 2017, the Plaintiff filed this action under 42 U.S.C. § 1983 against the above-named Defendants. In addition, the Plaintiff filed a Motion for Leave to Proceed *in forma pauperis*, together with a Prisoner Trust Fund Account Statement. On August 29, 2017, former United States Magistrate Judge James E. Seibert filed a Report and Recommendation in which he recommended that the Plaintiff's request to proceed without prepayment of fees be denied because the Plaintiff had enough funds to pay the $400 filing fee. On September 8, 2017, the Plaintiff paid the $400 filing fee. On October 3, 2017, the Court adopted the Report and Recommendation while observing that the Plaintiff had tendered full payment of the filing fee.

On October 30, 2017, Magistrate Judge Seibert conducted a preliminary review of this matter and determined that summary dismissal was not warranted. Because the Plaintiff was not proceeding *in forma* pauperis, he was not entitled to service of process by the United States Marshal Service. Instead, the Plaintiff was responsible for

obtaining service on his own in compliance with Rule 4 of the Federal Rules of Civil Procedure. Therefore, Magistrate Judge Seibert entered an order advising the Plaintiff of the requirements of Rule 4 and establishing the deadline for service as November 27, 2017. In addition, the order directed the Clerk of Court to issue 21 day summonses for the named defendants and forward those forms to the Plaintiff. The Plaintiff was afforded 30 days from entry of the order to provide the Court with the actual name of the President of Glenville State College so that a proper summons could be issued. ECF No. 13. On November 9, 2017, the Plaintiff notified the Court that he was "dropping" the President of Glenville State College as a defendant. In addition, he noted that on October 8, 2017, he sent the remaining Defendants each a "Notice of Lawsuit and Request to Waive Service of a Summons" pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. ECF No. 16.

On January 22, 2018, Magistrate Judge Seibert entered an Order directing the Plaintiff to show cause why this case should not be dismissed because it had been 147 days since the complaint was filed, and he had not provided proof of service. ECF No. 17. In response, the Plaintiff established that on November 8, 2017, he sent each Defendant a "Notice of Lawsuit and Request to Waive Service of a Summons" with an appended Rule 4 waiver form via first-class mail. The Plaintiff indicated that no Defendant had returned the form, but it appeared that the Defendants did receive the Notice and Request because AIG sent him a letter dated November 16, 2017, indicating that they received his suit and assigned the matter to John Fuller who would defend the Division of Corrections and any employees named in the complaint. ECF No. 22-9.

On February 7, 2018, the pro se law clerk contacted counsel to determine whether he was authorized to accept service on behalf of his clients. Jennifer Tully, another member of Mr. Fuller's firm advised that she had been authorized to accept service of process on behalf of Defendants Diana R. Miller, Steve Fincham and Shannon Shiflet. Accordingly, the Clerk of Court was directed to prepare a new summons for each of these Defendants in care of Bailey and Wyant, PLLC, 500 Virginia Street, East, Suite 600, Charleston, WV 25301. In addition, when the summonses were ready, the Clerk was directed to contact Ms. Tulley, who would have an employee authorized to accept service come to the Clerk's Office to execute an Acceptance of Service for docketing. ECF No. 23.  The summonses were reissued  on February 14, 2018 [ECF No. 24], and on February 15, 2018, service of the summons and complaint was accepted on behalf of Diana R. Miller, Stephen Fincham and Shannon Shiflet by Crystal Johnson, an employee of Bailey & Wyant, PLLC

On March 5, 2018, the Defendants filed a Motion to Dismiss. ECF No. 27. A Roseboro Notice was issued on March 6, 2018. ECF No. 29. On April 30, 2018, the Plaintiff filed a Response.

## II. The Pleadings

### A. The Complaint

At the time he filed his complaint, the Plaintiff was a state inmate housed at Huttonsville Correctional Center. With respect to Diana Miller, he alleges that she violated his Eighth and Fourteenth Amendment rights  by inflicting cruel and unusual punishment and depriving him of life, liberty, property and equal protection of the law. In

support of those allegations, he notes that he was placed in segregation[1] and then received a letter from Glenville State College warning him that his future eligibility to receive federal financial aid could be affected[2].

The Plaintiff alleges that he never took the test everybody else took before attending Glenville State College but was being "charged of using federal grant money." ECF No. 1 at 8. The Plaintiff also notes that he was the only person taking classes without testing and the only person locked up in segregation using federal grant money without being present to sign up for the next term. He continues that nothing was provided for the Plaintiff financially such as "paper, pen, pencils, folders, etc." Id. Finally, upon receiving notice that the Federal Student Aid, an office of the U.S. Department of Education, could not locate any federal grant and loan records in the National Student Loan Data System using the Social Security Number he provided [ECF No. 1-8], the Plaintiff concluded that Diana Miller, who he indicates is in charge of the education classes, is somehow involved in embezzling, forgery, and "arbitrary dictatorship." ECF No. 1 at 8.

With respect to Defendant, Steve Fincham, he alleges that he violated his First, Fourth, Eighth and Fourteenth Amendment rights. In support of this allegation, the

---

[1] An exhibit attached to the complaint indicates that on September 20, 2016, the Plaintiff was charged with Violation Number 2:32 Insubordination/Insolence. The Plaintiff pleaded no contest and was disciplined with 30 days of punitive segregation and 30 days loss of all privileges both to begin on November 6, 2016, and end on December 6, 2016. ECF No. 1-9 at 1.

[2] The letter, which is dated December 20, 2016, indicates that it is a warning to notify the Plaintiff that he was not making Financial Aid Satisfactory Academic Progress according to Glenville State's policy. In particular, it advised him that his overall grade point average was below the minimum standards, and he not successfully passed at least 2/3 of the overall hours in which he had been enrolled. The letter concluded that this policy would be reviewed and enforced at the end of the next term in which he was enrolled and could affect his future eligibility to receive federal financial aid.

Plaintiff indicates in retaliation for seeking information against Defendant Miller, he repeatedly has been charged $0.47 to send mail, when the mailroom only spends $0.46 to send out his mail. In addition, he indicates further retaliation when mail from the Federal Student Aid office, which he claims is legal mail, was opened. ECF No. 1 at 9.

Finally, with respect to Shannon Shiflet, the Plaintiff alleges that she also violated his First, Fourth, Eighth and Fourteenth Amendment rights by aiding and abetting in not delivering his legal mail and covering up the fraudulent action of Diana Miller by tampering with mail. In support of this allegation, the Plaintiff has attached a legal log book which shows that he was only given mail from the Commissioner's office. Again, it appears that he is alleging that mail from the Federal Student Aid Office is legal mail.

For relief, the Plaintiff is requesting $1,000,000 in damages from Defendant Miller and $40,000 each from Defendants Fincham and Shiflet.

**B. The Defendants' Motion to Dismiss**

In response, the Defendants contend that the exhibits attached to the Plaintiff's complaint make it clear that he does not have any grants or student loans, and therefore, Defendant Miller could not have possibly stolen the same. In addition, they argue that the Plaintiff appears to have misunderstood a "form letter" sent to warn all students that unsatisfactory academic performance would result in ineligibility for future financial aid.

With respect to the Plaintiff's complaint regarding legal mail, the Defendants note that it appears that the "legal mail" at issue is a letter dated February 27, 2017, from the U.S. Department of Education ECF No. 1-11. The Defendants contend that said letter is not "legal Mail" for purposes of the DOC's policy regarding handling of legal mail. In

addition, with respect to the Plaintiff's allegations regarding legal mail that is missing, the Defendants assert that the Plaintiff does not understand that the grievance response that he received from the Commission was considered "privileged mail," and he signed for it on January 30, 2017. ECF No. 1-5.

With respect to the Plaintiff's allegations that he was overcharged for postage, the Defendants acknowledge that the Plaintiff may have been charged $0.47 for stamps, rather than $0.46, but because of a grievance, he was paid back $0.12. The Defendants allege that the Plaintiff is attempting to engineer a clerical error, that has been corrected and he been made a whole, into a Constitutional violation.

Finally, with respect to the Plaintiff's allegation regarding tampering with mail, the Defendants indicate that it appears he is referring to the December 20, 2016, correspondence from the Financial Manager for Glenville State College. This correspondence was not received until early January 2017. However, as explained in a respondence to his grievance regarding this issue, the letter was hand delivered by Glenville State College staff. Accordingly, there was no postage or postmark on the subject letter because it did not travel through the U.S. Mail. Therefore, the Defendants allege that the Plaintiff again is attempting to create a wrong where there has been none.

## C. The Plaintiff's Response

The Plaintiff first disputes the Defendants' position that he never received any financial aid. He argues that the only way he could have enrolled in classes was through a Pell grant which he received. The Plaintiff also alleges that the Defendants

misinterpreted the letter from the Financial Aid Manager at Glenville State College. However, his argument in that regard is not discernible.

The Plaintiff clarifies that the legal mail he received opened was his Grievance No. 17-HCC-E-27 [ECF No. 1-2], which dealt with his question about receiving mail from the Federal Student Aid Office of the U.S. Department of Education. It appears that the Plaintiff alleges it was opened in retaliation for a letter he wrote the chairperson of the West Virginia Parole Board on June 5, 2017. ECF No. 1-7.

He also attempts to clarify his argument regarding missing mail. He notes that Defendant Fincham stated on February 23, 2017, that the only legal mail he received in 2017, was the Grievance response from the Commissioner on January 30, 2017. However, the Plaintiff argues that he received additional mail on February 14 or 15, 2017, which was from a different address than the commissioner's office. It appears he is alleging that Defendant Fincham violated BOP policy by not logging legal mail.

With respect to being overcharged $0.12 for postage, the Plaintiff acknowledges that he was reimbursed $0.12 but not for his research, paper and mailing it took to catch and correct the situation.

Finally, with respect to embezzlement, the Plaintiff notes that the Defendants allege that no student grant ever existed. However, he maintains that a "New Exhibit," which he does not attach, shows a second chance Pell Program that was sent to him.

### III. Legal Standard

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the

applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a Plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the Plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, for a complaint to survive dismissal for failure to state a claim, the Plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the

complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" to meet the plausibility standard and survive dismissal for failure to state a claim. (Id)**.**

### IV. Analysis

According to the West Virginia Division of Correction and Rehabilitation website, the Plaintiff was convicted of First Degree Murder in the Circuit Court of Kanawha County, West Virginia. He was sentenced on April 28, 2003. Although not clear, it appears that he had a parole hearing on or about October 1, 2018 and was subsequently paroled. As noted by a change of address that he filed on November 28, 2018, he is currently living in Dunbar, West Virginia.

Although the Plaintiff provides no explanation for his enrollment at Glenville State College while incarcerated at Huttonsville Correctional Center, a review of internet resources establishes that as of the fall semester of 2016, Glenville State College was one of 67 colleges across the country, and the only one in West Virginia, to be included in an experimental program which allows inmates to use federal money for college courses. The program is called the Second Chance Pell.

A. **Embezzlement**

There appears to be no dispute that the Plaintiff was enrolled at Glenville State College during the fall semester of 2016, and there appears to be no dispute that the

9

Plaintiff was notified by letter dated December 20, 2016, that he was not making "Financial Aid Satisfactory Academic Progress" according to Glenville State's policy. Although the Defendants maintain that this letter is sent to all students, regardless of whether they are receiving financial aid, it seems apparent that the Plaintiff was receiving a Second Chance Pell grant.  However, aside from his bald assertion that Defendant Miller used the program and his name to embezzle money, there is simply nothing to support that allegation. The undersigned recognizes that the Federal Financial Aid notified the Plaintiff on April 10, 2017, that it could not locate any federal grant and loan records in the National Student Loan Data System using the Social Security Number ("SSN") that he provided, it is more than likely that the Plaintiff provided an incorrect SSN. Furthermore, in his response to the Defendants' Motion to Dismiss, he references a "New Exhibit" showing a second chance Pell Program that was sent to the Plaintiff. Therefore, the Plaintiff's response defeats his claim that Defendant Miller embezzled money.

### B. Legal Mail

The Plaintiff makes three allegations regarding legal mail.  First, he alleges that he received an opened letter from the Financial Aid Office at Glenville State College. Next, he alleges that he signed for legal mail but only received his grievance response from the Commissioner's Office. Finally, he alleges that Defendant Fincham incorrectly stated that he only received one piece of legal mail in 2017.

First, the State of West Virginia Division of Corrections Policy Directive regarding mail privileges for inmates is set forth in Policy Number 503.00.  The following definitions are provided:

10

> **Privileged Mail**  Inmates shall be permitted to send sealed letters to a specified class of persons and organizations, including but not limited to the following: courts; counsel; Officers; administrator/designee of the Division of Corrections' Inmate Grievance System; and members of the West Virginia Board of Probation and Parole. Staff, in the presence of the inmate, may be allowed to inspect outgoing privileged mail for contraband before it is sealed. Mail to inmates from this specified class of persons and organizations may be opened only to inspect for contraband and only in the presence of the inmate, unless waived in writing, or in circumstances which may indicate contamination.
>
> **Attorney/Client Mail**: Any written correspondence to or from an inmate and his/her attorney of record. Such correspondence must clearly state "legal mail" on the envelope or must clearly indicate it is from the inmate's attorney of record.
>
> **General Correspondence:** Shall include all written communications and letters which are not privileged mail. Outgoing and incoming general correspondence may be opened and inspected for contraband and read.

To the extent that the Plaintiff complains that the letter from the Financial Aid Office was opened, it is clear that this mail was not privileged mail and could be opened outside his presence. In addition, to the extent that the Plaintiff is complaining that the letter was dated December 20, 2016, and was not received until January 5, 2017, with no postage, the Plaintiff does not dispute that the mail was hand delivered by staff from Glenville State College, nor that it was processed within 24 hours. ECF No. 1-3. Finally, to the extent that Plaintiff believes that he received other "legal"[3] mail, and that Defendant Fincham was retaliating when he stated that he only received one piece of legal mail in 2017, the same is not supported by his own exhibits. The Plaintiff has attached three grievances with his complaint. The first concerns the letter received from Glenville State College. The second is dated March 15, 2017, and concerns the letter received from the U.S. Department of Education. ECF No. 1-2. The third is dated March

---

[3] The undersigned notes that both the Plaintiff and the Defendants use the term "legal" mail, when in fact what they are referring to is privileged mail as defined in the policy.

11

27, 2017, and concerns being overcharged $0.01 for postage. ECF No. 1-1. Therefore, on February 23, 2017, the date that Defendant Fincham responded to the Plaintiff's inquiry and stated that he had received one piece of legal mail, he was answering truthfully.

### C. <u>Overcharging Postage</u>

The Plaintiff alleges that he was overcharged on stamps in retaliation for seeking information about Defendant Miller. There is no question that the Plaintiff was charged 0.47 for twelve mailing for which he should have been charged only 0.46. Furthermore, there is no dispute at the Plaintiff's trust account was refunded 0.12 on April 4, 2017.

To sustain a claim based on retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir.1994). Therefore, *"in forma pauperis* plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to survive [§ 1915(e)(2)(B) ]." <u>Id.</u> Furthermore, claims of retaliation are treated with skepticism in the prison context. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4h Cir.1996). Additionally, "a plaintiff alleging that government officials retaliated against [him] in violation of her constitutional rights must demonstrate, *inter alia,* that [he] suffered some adversity in response to [his] exercise of protected rights. " <u>American Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md.</u>, 999 F.2d 780, 785 (4th Cir. 1993).

Inmates do not have a constitutional right to participate in grievance procedures. Adams, 40 F. 3d at 75.  Thus, the plaintiff can state no retaliation claim regarding the filing of his grievances.

### V. Recommendation

For the reasons set forth above, the undersigned recommends that the pursuant to the Plaintiff's notification, John Doe Glenville State College be **DISMISSED** as a Defendant; the Plaintiff's second Motion for Leave to Proceed *in forma* pauperis [ECF No. 19] be **DISMISSED AS MOOT;** the Defendants' Motion to Dismiss [ECF No. 27] be **GRANTED**; and the Plaintiff's § 1983 complaint [ECF No. 1] be **DISMISSED with prejudice for failure to state a claim upon which relief can be granted.**

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985); Wells v. Shriners Hosp., 109 F.3d 198 (4th Cir 1997).

This Report and Recommendation completes the referral from the District Court. The Clerk is directed to terminate the Magistrate Judge association with this case.

The Clerk of the Court is directed to send a copy of this Order to the Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

DATED: February 5, 2019.

/s/ James P. Mazzone
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE